UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HERMANSON COMPANY, LLP,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SIRIUSPOINT SPECIALTY INSURANCE CORPORATION,<br>　　　　　Defendant. | CASE NO. 2:23-cv-00431-JHC<br><br>ORDER |

# I
## INTRODUCTION

This insurance matter comes before the Court on Defendant Siriuspoint Specialty Insurance Corporation's Motion for Summary Judgment (Dkt. # 15) and Plaintiff Hermanson Company, LLP's Motion for Partial Summary Judgment (Dkt. # 17).  The motions present questions about the interpretation of the "Contractor's Professional Redress Coverage" provision in the insurance policy at issue.  The Court has considered: the materials filed in support of, and in opposition to, the motions, pertinent portions of the record, and the applicable law.  Being fully advised, the Court DENIES Siriuspoint's motion for summary judgment and GRANTS Hermanson's motion for partial summary judgment.

ORDER - 1

## II
### BACKGROUND

This case involves an insurance dispute between the insured mechanical contractor, Hermanson and its insurer Siriuspoint, "relating to a specific subset of costs that Hermanson incurred in connection with" a construction project in Puyallup, Washington.  Dkt. # 13 at 2.  The parties do not dispute the following facts.  *See id.* at 2–3 (stipulated motion); Dkt. # 15 at 2–8; Dkt. # 17 at 3–7.  In 2021, general contractor Anderson Construction engaged Hermanson to provide "design-build services for a mechanical system at the Puyallup Surgical Center's remodeling project[.]"  Dkt. # 17 at 1, 3.  During this time, Siriuspoint provided Hermanson with professional liability insurance; the policy established coverage from March 1, 2021, to March 1, 2022.  Dkt. # 15 at 2; Dkt. # 17 at 2; *see* Dkt. # 16-1 at 9 ("Contractor's Pollution and Professional Legal Liability Plus").  During the project, Hermanson "experienced design and engineering challenges," and then incurred significant expense "to avoid or mitigate professional negligence claims" ("Redress Expenses").  Dkt. # 17 at 1, 4.

On February 10, 2022, Anderson Construction made a claim against Hermanson for these design and engineering issues.  *Id.* at 1.  During the policy period, on February 24, 2022, Hermanson tendered the general contactor's claim to Siriuspoint ("February 2022 tender"), seeking coverage under the "Contractor's Professional Redress" provision of its policy.  *Id.* at 2, 5; Dkt. # 15 at 4–5; Dkt. # 16-1 at 13.  In October 2022, Hermanson submitted invoices to Siriuspoint showing that before February 24, 2022, Hermanson had incurred $355,503.57 in an attempt to resolve the design and engineering issues underlying Anderson Construction's claim.  Dkt. # 15 at 5; Dkt. # 17 at 6.

On November 1, 2022, Siriuspoint formally denied coverage for the Redress Expenses because Hermanson had violated its insurance policy by incurring these costs before the

ORDER - 2

February 2022 tender.  Dkt. # 15 at 5; Dkt. # 17 at 2, 6; Dkt. # 18 at 21–23.  On November 9, 2022, Hermanson replied, contending that Siriuspoint may not deny coverage because the insurer "can escape liability for an otherwise covered claim on grounds that the insured breached a policy condition only if the insurer can prove that the breach caused actual and substantial prejudice."  Dkt. # 17 at 7; *see* Dkt. # 18 at 25–33.  Siriuspoint again denied coverage of the Redress Expenses, and in January 2023, Hermanson filed this action.[1]  *See* Dkt. ## 1, 1-1.

Hermanson filed a second amended complaint on March 31, 2023.  *See* Dkt. # 7.  Hermanson alleges that Siriuspoint (1) breached its insurance contract by failing to pay the full amount of policy benefits; (2) breached the covenant of good faith and fair dealing; (3) violated the Washington Unfair Claims Settlement Practices Act, WAC 284-30 *et seq.*, and the Washington Consumer Protection Act, RCW 19.86 *et seq.*; and (4) violated the Insurance Fair Conduct Act, *see* RCW 48.30.015; Dkt. # 7 at 5–8.  Hermanson seeks declaratory and compensatory relief as well as attorney fees.  *Id.* at 12.

On April 6, 2023, Siriuspoint filed its answer, denying Hermanson's claims and asserting defenses to the same.  *See generally* Dkt. # 8.  Siriuspoint also seeks attorney fees.  *Id.* at 12.  On July 20, 2023, Siriuspoint moved for summary judgment and Hermanson cross-moved for partial summary judgment.  *See* Dkt. ## 15, 17.

At the heart of the parties' dispute is how to interpret Siriuspoint's "Contractor's Professional Redress Coverage" provision ("Coverage C"):

> SECTION I. INSURING AGREEMENTS AND DEFENSE OBLIGATIONS
>
> THE FOLLOWING COVERAGES ARE IN EFFECT ONLY IF LIMITS OF LIABILITY ARE INDICATED FOR SUCH COVERAGE IN THE

---

[1] Hermanson first filed in the King County Superior Court of Washington; Siriuspoint removed the case to the United States District Court for the Western District of Washington in March 2023.  *See* Dkt. ## 1, 1-1.

ORDER - 3

DECLARATIONS.  EACH COVERAGE THAT IS IN EFFECT IS SUBJECT TO SECTION V. LIMITS OF LIABILITY AND SELF-INSURED RETENTION.

. . .

C. COVERAGE C – CONTRACTOR'S PROFESSIONAL REDRESS COVERAGE

The Company will indemnify the INSURED for REDRESS EXPENSE incurred to avoid or mitigate a CLAIM for PROFESSIONAL LOSS arising from a negligent act, error or omission with respect to the rendering of PROFESSIONAL SERVICES, *provided that*:

1. such CLAIM would otherwise be covered under Coverage B. of this Policy;

2. during the POLICY PERIOD, the INSURED reports such negligent act, error or omission with respect to the rendering of PROFESSIONAL SERVICES to the Company, in writing; and

3. *prior to incurring such REDRESS EXPENSE, the INSURED demonstrates to the Company the reasonableness and necessity of such expenses in light of the projected avoidance or mitigation of a covered CLAIM, and the Company consents in writing to such expense.*

Dkt. # 16-1 at 13 (italicized emphasis added).

The parties do not dispute that Hermanson violated subparagraph 3 ("Prior Consent clause") by failing to notify Siriuspoint, before the February 2022 tender, of the Redress Expenses.  But they dispute the consequences of this violation.  *See generally* Dkt. ## 15, 17, 21, 23.  Hermanson asserts that the Prior Consent clause "operates as a post-loss condition, such that [Siriuspoint] must prove that it was actually and substantially prejudiced by a breach."  Dkt. # 13 at 2.  Siriuspoint says that the Prior Consent clause—"standing alone and/or in conjunction with other terms and conditions in the policy"—is an "'insuring agreement' and a core requirement upon which coverage itself depends."  *Id.*  So Siriuspoint concludes that it may deny coverage of the Redress Expenses regardless of prejudice.  *Id.*

ORDER - 4

# III
## DISCUSSION

A.   Summary Judgment Standard

Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248–49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the lack of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

On cross motions, a court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006); *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) ("[W]hen simultaneous cross-motions for summary judgment on the

ORDER - 5

same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." (quoting *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001))).

Where there are no material facts in dispute, the interpretation of insurance policy is a matter of law and appropriately decided on summary judgment. *See Allstate Ins. Co. v. Peasley*, 131 Wash. 2d 420, 423–24, 932 P. 2d 1244 (1997); *see, e.g.*, *Am. Bankers Ins. v. N.W. Nat. Ins.*, 198 F.3d 1332 (11th Cir.1999). The parties agree that there are no material facts in dispute. *See* Dkt. # 13 at 2.

B.   Washington Law on Insurance Policy Interpretation

This case was removed to the Court based on diversity jurisdiction and, accordingly, Washington law governs. *See Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914 (9th Cir. 1999); *Anderson v. State Farm Mut. Auto. Ins. Co.*, No. C06-1112RSM, 2007 WL 1577870 (W.D. Wash. May 30, 2007).

"The insurance contract must be viewed in its entirety; a phrase cannot be interpreted in isolation." *Peasley*, 131 Wash. 2d at 423–24. "Insurance contracts should be interpreted as an average insurance purchaser would understand them[.]" *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wash. App. 335, 338, 983 P. 2d 707 (1999), *as amended* (Oct. 12, 1999) (quoting *Daley v. Allstate Ins. Co.*, 135 Wash.2d 777, 784, 958 P. 2d 990 (1998)). The Court should apply "a practical and reasonable rather than a literal interpretation[,]" without applying a "strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion, or render the policy nonsensical or ineffective." *Morgan v. Prudential Ins. Co. of Am.*, 86 Wash. 2d 432, 434–35, 545 P. 2d 1193 (1976). "If the policy language on its face is fairly susceptible to two different

ORDER - 6

and reasonable interpretations, then ambiguity exists, and the court must apply the interpretation most favorable to the insured." *United Specialty Ins. Co. v. Shot Shakers, Inc.*, No. C18-0596JLR, 2019 WL 199645, at * 8 (W.D. Wash. Jan. 15, 2019) (citing *Peasley*, 131 Wash. 2d at 422–26).

Courts follow a two-step process to determine whether an insurance policy covers an insured's claim. First, the insured must establish that the claim at issue triggers coverage. Second, if coverage is triggered, the burden shifts to the insurer to establish "that its policy contains an exclusion barring the claim." *Id.* at *9 (citing *McDonald v. State Farm Fire & Cas. Co.*, 119 Wash. 2d 724, 731, 837 P. 2d 1000 (1992)); *see Diamaco*, 97 Wash. App. at 338.

C.   The Motions

  1.   Siriuspoint's Motion for Summary Judgment

Siriuspoint contends that the Court should dismiss this action because Hermanson cannot "satisfy its threshold burden of proving that the [Redress Expenses] fall within the scope of an 'insuring agreement' or 'coverage grant'" as stated in Coverage C. Dkt. # 15 at 9–12; *see* Dkt. # 16-1 at 13. According to Siriuspoint, Coverage C's language, *see supra* part II, imposes "multiple threshold requirements that establish and limit the *scope of coverage* for REDRESS EXPENSE that is compensable under Coverage C." Dkt. # 15 at 10 (emphasis in original). For example, Siriuspoint maintains that subparagraphs 1 and 2 are "claims-made and reported" requirements, which "Washington courts have repeatedly recognized" to be strictly enforceable threshold coverage requirements that establish coverage limitations, allowing an insurer's denial of coverage without the showing of prejudice. *Id.* at 10–11 (citing *Safeco Title Ins. Co. v. Gannon*, 54 Wash. App. 330, 335-40, 774 P.2d 30 (1989); *Moody v. Am. Guar. and Liab. Ins. Co.*, 804 F. Supp. 2d 1123, 1125 (W.D. Wash. 2011); *Manufactured Hous. Communities of Wash. v. St. Paul Mercury Ins. Co.*, 660 F. Supp. 2d 1208, 1213-15 (W.D. Wash. 2009); *Great*

ORDER - 7

*Am. Ins. Co. v. Sea Shepherd Conservation Soc.*, No. C13-1017RSM, 2014 WL 2170297, *5–*6 (W.D. Wash. May 23, 2014)).

Siriuspoint maintains that subparagraph 3 is unambiguous, plainly requiring Hermanson to "demonstrate to [Siriuspoint] the reasonableness and necessity of such expense in light of the projected avoidance or mitigation of a covered CLAIM, and (2) prior to incurring REDRESS EXPENSE, [Siriuspoint] must consent in writing to such expense." *Id.* at 11.  Siriuspoint contends that, when reading the three conjunctive subparagraphs together,

> an average purchaser of insurance would interpret the language of Subpart 3 (1) to impose strictly enforceable threshold coverage requirements (2) that serve to establish and limit the scope of "first-party" coverage for REDRESS EXPENSE and (3) that require a denial of coverage -- without a showing of prejudice -- if the insured fails to satisfy them.

*Id.*  For these reasons, according to Siriuspoint, Hermanson's claim does not trigger coverage because Hermanson failed to satisfy subparagraph 3's "core coverage requirement." Dkt. # 23 at 19.  Thus, "the Court's insurance coverage analysis should end there" because "the burden does not shift to [Siriuspoint] to show that any exclusionary term in the policy applies to the [Redress Expenses]." Dkt. # 15 at 12.

2.      Hermanson's Motion for Partial Summary Judgment and Opposition

Hermanson opposes Siriuspoint's policy interpretation.  *See* Dkt. ## 17, 21.  It first contends that the Prior Consent clause "is a condition" because conditional language—"provided that"—precedes it.  Dkt. # 17 at 8–9.  According to Hermanson, Siriuspoint "has conflated the claims-made and reported requirements in [subparagraphs] 1 and 2 with the Prior Consent requirement in subpart 3." Dkt. # 21 at 1.  Hermanson agrees with Siriuspoint that subparagraphs 1 and 2 solely "define the temporal boundaries of the Policy's basic coverage, providing that coverage is limited to claims made and reported during the policy period." *Id.* at 1–2.  Hermanson also agrees that violations of "claims-made-and-reported" requirements, like

those in subparagraphs 1 and 2, do not require an insurer to show prejudice when denying coverage because if policyholders were to report a claim after their coverage has expired, this would essentially be a "free extension of coverage." *Id.* at 2.  But it contends that because it reported its claims to Siriuspoint within the policy period, while violating a condition of the policy and not a claims-made-and-reported requirement, it has not impermissibly expanded the scope of its policy.  *Id.*

Hermanson says that the Prior Consent clause—unlike subparagraphs 1 and 2—is not a coverage threshold requirement because it "describes a separate duty to notify and cooperate regarding costs incurred within the confines of the policy period" and "does not define or circumscribe the temporal boundaries of the Policy's coverage." *Id.* at 1–2, 5.  Hermanson states that the Prior Consent clause "is thus analogous to the myriad notice, consent, and cooperation clauses to which Washington courts apply the prejudice rule." *Id.* at 5.  According to Hermanson, "Washington courts do require showing of prejudice for noncompliance with notice / consent / cooperation requirements (like those in [subparagraph] 3)" because "were insurers allowed to escape liability for an otherwise covered claim due to a non-prejudicial breach of a notice/consent/cooperation clause, insurers would receive an unfair windfall at the policyholder's expense." *Id.* at 2–3.  For these reasons, Hermanson says that Siriuspoint must "prove that it was prejudiced when Hermanson incurred Redress Expenses prior to securing [Siriuspoint] consent." *Id.* at 3; *see generally* Dkt. # 17.

Hermanson also highlights a different section of the policy that "repeat[s] the Prior Consent clause[,]":

> SECTION VI.  CLAIM AND NOTICE PROVISIONS
>
> As *a condition precedent* to any coverage afforded by this Policy, the INSURED must comply with all of the following:
>
> . . .

ORDER - 9

C. VOLUNTARY PAYMENTS AND ADMISSION OF LIABILITY

> No costs, charges or expenses shall be incurred, nor payments made, obligations assumed, or remediation commenced, without the Company's written consent. No INSURED shall admit liability, settle or attempt to settle or otherwise dispose of any CLAIM, waive or extend any statute of limitation or statute of repose or the accrual thereof, agree to any form of alternative dispute resolution, or, except at the INSURED's own cost, voluntarily make any payment, or *incur any CLEAN-UP COSTS, REDRESS EXPENSE or other expenses for which coverage may be sought, prior to receipt of the Company's written consent.*

Dkt. # 16-1 at 28–29 (italicized emphasis added). Hermanson contends that this "Voluntary Payments clause" and the Prior Consent clause are both conditions that require "Hermanson to secure Sirius's prior written consent before incurring Redress Expense." Dkt. # 17 at 10. Hermanson maintains that the Court must construe the provisions of the contract together to give "force and effect" to each clause, *see id.* at 11 (citing *Transcon. Ins. Co. v. Wash. Pub. Utilities Districts' Util. Sys.*, 111 Wash. 2d 452, 456, 760 P. 2d 337 (1988)). It argues that, if the Court were to read the Prior Consent clause as a strictly enforceable threshold coverage requirement—contradicting the condition precedent language in the Voluntary Payments clause—any such conflict or ambiguity must be construed in Hermanson's favor. *Id.* (citing *DePhelps v. Safeco Ins. Co. of Am.*, 116 Wash. App. 441, 450 (2003) ("To the extent the policy contains inconsistent or conflicting terms, the conflict must be resolved in favor of the insured.")).

For these reasons, Hermanson concludes that Siriuspoint may deny coverage of its Redress Expenses only if it can prove Hermanson tender caused it actual and substantial prejudice. *Id.* at 12 (citing *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wash. 2d 789, 803, 881 P. 2d 1020 (1994)).

ORDER - 10

D.     The Court's Analysis

After reviewing the applicable case law, the insurance policy, and the parties' briefing, *see* Dkt. ## 15, 17, 21, 23, 24, 25, the Court agrees with Hermanson.

1.     The prejudice rule

In Washington, in certain circumstances, an insured's violation of a policy condition excuses the insurer's performance only when the insurer can prove the insured's breach caused it actual and substantial prejudice. Nearly five decades ago, the Washington Supreme Court introduced this principle in *Oregon Automobile Insurance Company v. Salzberg*, 85 Wash. 2d 372, 535 P.2d 816 (1975). There, the court considered "under what circumstances may an insurance company be relieved of liability and the duty to defend an insured for an alleged breach by the insured of a cooperation clause in the insurance policy." *Id.* at 374. In its analysis, the court stated:

> We deem it no longer appropriate to adhere to the view that the release of an insurer from its obligations without a showing of prejudice to it should depend upon the legalistic conundrum of whether the cooperation clause is an express condition precedent or only a covenant. *Such an approach places an undue emphasis on traditional, technical contract principles and their dubious application in cases of this nature.* In addition, insurance policies, in fact, are simply unlike traditional contracts, [i].e., they are not purely private affairs but abound with public policy considerations, one of which is that the risk-spreading theory of such policies should operate to afford to affected members of the public—frequently innocent third persons—the maximum protection possible consonant with fairness to the insurer.

*Id.* at 376–77 (emphasis added). Focusing on the public policy underlying insurance policy interpretation, the court held that

> sound public policy requires that an alleged breach of a cooperation clause may be considered substantial and material, and may effect a release of an insurer from its responsibilities [o]nly if the insurer was actually [p]rejudiced by the insured's actions or conduct. The requirement of a showing of prejudice would pertain *irrespective of whether the cooperation clause could be said to be a covenant or an express condition precedent* and, in this regard, the burden of proof is upon the insurer.

*Id.* at 377 (emphasis added).

Over the years, Washington courts have expanded this rule, requiring "a showing of prejudice in nearly all other contexts to prevent insurers from receiving windfalls at the expense of the public and to avoid hinging relief on a discredited legalistic distinction." *Staples v. Allstate Ins. Co.*, 176 Wash. 2d 404, 418, 295 P.3d 201, 209 (2013) (assessing an insured's breach of a cooperation clause, which required insured to cooperate with insurer's handling of claims).

Washington cases establish that, to deny coverage, insurers must show actual and substantial prejudice when an insured has breached a policy's (1) cooperation clause, (2) consent-to-settle clause, or (3) notice clause. *See, e.g.*, *Mut. of Enumclaw Ins. Co. v. T&G Const., Inc.*, 165 Wash. 2d 255, 268-69 (2008) (cooperation clause); *Klickitat*, 124 Wash. 2d at 803–04 (consent-to-settle clause); *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wash. 2d 411, 418, 191 P.3d 866 (2008) (notice clause). Cooperation clauses require insured parties to cooperate with the insurer and help make settlements of any claims made against them. *See, e.g.*, *Wilson v. Geico Indem. Co.*, No. C18-226 RAJ, 2018 WL 3869436, at *4 (W.D. Wash. Aug. 15, 2018) (holding that an insurer must show affirmative proof of prejudice when denying insurance coverage based on insured's breach of a cooperation clause). Consent-to-settle clauses—also called voluntary payment clauses—preclude an insured party's settlement without the insurers' consent. In *Klickitat*, the Washington Supreme Court explained that

> [m]uch like cooperation and notice clauses, a no-settlement clause contains a condition the insured must fulfill to create the insurer's obligation to pay under the policy. Such conditions designate the manner in which claims covered by the policy are to be handled once a claim has been made or events giving rise to a claim have occurred. They are clearly placed in policies to prevent the insurer from being prejudiced by the insured's actions. To release an insurer from its obligations without a showing of actual prejudice would be to authorize a possible windfall for the insurers.

*Klickitat*, 124 Wash. 2d at 803–04 (internal citations omitted) ("an insurer cannot deprive an insured of the benefit of purchased coverage absent a showing that the insurer was actually prejudiced by the insured's noncompliance" with the consent-to-settle clause).

Lastly, some notice clauses require an insurer's showing of prejudice in the event of the denial of coverage.  For example, "an insurer must perform under the insurance contract even where an insured breaches the timely notice provision of the contract unless the insurer can show actual and substantial prejudice due to the late notice."  *See Axis Surplus Ins. Co. v. James River Ins. Co.*, 635 F. Supp. 2d 1214, 1218 (W.D. Wash. 2009) ("[C]ourts have repeatedly held that an insured's breach of the duty to tender, to cooperate, or to refrain from voluntary payments, or to comply fully with a policy before suing its insurer, is no basis for denying coverage, unless the insurer can prove actual and substantial prejudice arising from the breach.").

        2.        Notice clauses: occurrence-based and claims-made policies

Even so, there is a limit to this third category of insurance provision.  In *Safeco Title Ins. Company v. Gannon*, a bank employee, Gannon, processed a deed of trust through escrow and notarized the signature of a woman purporting to be someone else.  54 Wash. App. 330, 331, 774 P.2d 30 (1989).  A couple of months later, in July 1983, the bank ceased doing business and, in 1985, Safeco Title Insurance Company launched a subrogation claim against Gannon for negligently notarizing a fraudulent signature.  *Id.* at 332.  When still in operation, the bank was insured under an "escrow agent's liability policy with Federal Insurance Company against 'claims first brought against the Insured during the Claims Period, regardless of when the Breach of Escrow Duty (as defined in the policy) may have occurred.'"  *Id.*  The policy provided coverage from May 20, 1979 to May 20, 1980, and was renewed annually through May 20, 1983, at which time it terminated.  *Id.*  In June 1985, more than two years after the Federal

insurance policy lapsed, Gannon "tendered his defense to Federal, but Federal denied the tender on the basis that its 'claims made' policy expired in 1983 and that this claim was first made in the fall of 1984 when Safeco began proceeding with its subrogation suit." *Id.* Gannon sought declaratory relief from the state trial court concerning Federal Insurance Company's duty to defend him in this negligence action and appealed the dismissal of his case to the Washington Supreme Court. *Id.* at 331.

In assessing Gannon's case, the court explained that insurers must prove prejudice when an insured has violated a notice provision "which exclude coverage if the insured fails to notify the insurer of accidents or occurrences in a timely manner." *Id.* at 336. The court clarified that although that the "notice/prejudice" rule was "developed in an attempt to avoid the perceived unfairness of denying coverage for failure to comply with a notice provision if the insurer was not prejudiced by that failure[,]" the rule has limits that depend on whether the insurance policy in question is an "occurrence policy" or a "claims policy." *Id.* at 336–37.

Occurrence policies allow for an insurer to be "liable for the insured's malpractice, no matter when discovered, so long as the malpractice occur[s] within the time confines of the policy period." *Id.* at 337. "Coverage depends on when the negligent act or omission occurred and not when the claim was asserted." *Id.* This type of policy may extend the insurance coverage beyond the termination date and "it does not matter when the insurer is notified of the claim by the insured, so long as the notification is within a reasonable time and so long as the negligent act or omission occurred within the policy period itself." *Id.*

A claims-made policy, on the other hand, requires that a claim be made against the insured and reported to the insurer during the policy period, no matter the date of the insured's alleged wrongful conduct. *Gannon* clarifies that when "the claim is reported to the insurer

ORDER - 14

during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches." *Id.* at 338. "While there are sound reasons for applying the [notice/prejudice] rule to the typical notice provision in an occurrence policy, those reasons do not apply with equal force" with a claims-made policy. *Id.* at 337. Application of the prejudice rule to claims made after a claims-made policy has terminated "would materially alter the insurer's risk by making it difficult to ascertain potential liability with certainty at the end of the policy period." *Id.* at 339. Because the court held that Gannon failed to provide notice of the claim within the claims-made policy coverage period, it did not apply the notice/prejudice rule and denied his claim. *Id.* at 337–40.

Siriuspoint contends that *Gannon* is instructive because the application of the notice/prejudice rule in Hermanson's case would also "provide coverage the insurer did not intend to provide and the insured did not contract to receive." *See* Dkt. # 23 at 10 (citing *Gannon*, 54 Wash. App. at 339). According to Siriuspoint, the Court should therefore strictly enforce the Prior Consent clause. *Id.* at 11.

The Court disagrees. In *Gannon*, the Washington Supreme Court declined to apply the prejudice analysis because Gannon's policy was a claims-made policy and he failed to make a claim within the dates of his policy. *See also Manufactured Hous.*, 660 F. Supp. 2d at 1214 ("If a court were to allow an extension of coverage of reporting time after the end of the policy period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insurer has not bargained. This extension of coverage . . . in effect rewrites the contract between the two parties. This we cannot and will not do."). The *Gannon* court expressed its unwillingness to violate public policy by artificially extending a policy when the language of Gannon's coverage required that he bring a claim during his coverage dates.

ORDER - 15

Hermanson, on the other hand, tendered its claim to Siriuspoint before the end of the policy period. *See* Dkt. # 17 at 2, 5; Dkt. # 15 at 2, 4–5; Dkt. # 16-1 at 13; *see generally* Dkt. # 16-1. Hermanson failed to tender notice prior to incurring the Redress Expenses, but it did not fail to provide notice to Siriuspoint before its policy terminated; Hermanson's February 2022 tender did not impermissibly extend the dates of its coverage beyond what Siriuspoint contemplated. Siriuspoint's analysis of *Gannon* and use of its progeny[2] is therefore misplaced.

The Court thereby determines that the notice-prejudice rule applies here. The language of the Prior Consent clause, public policy, and case law support such an interpretation:

> Washington law permits the application of the notice-prejudice rule where a claim is made under a claims-made-and-reported policy within the reporting period, even if the claim is made contrary to a 60-day notice provision. To conclude otherwise would be to ignore the purpose of the notice-prejudice rule and the inherent distinction between occurrence policies and claims-made-and-reported policies.

*Providence Health & Servs. v. Certain Underwriters at Lloyd's London*, 358 F. Supp. 3d 1195, 1201 (W.D. Wash. 2019) (concluding that application of the prejudice rule does not amount to "an extension of coverage to the insured gratis" because the insurer provided notice during the coverage period and "the insured and insurers bargained for coverage for the reporting period—the policy period plus an extension of 60 days.").

---

[2] *See Moody*, 804 F. Supp. 2d at 1126 ("Mr. Ripley's malpractice insurance required that any claims be reported during the coverage period. It is undisputed that the claim associated with Mr. Moody's action against Mr. Ripley was not reported to American during the coverage period. Having thus concluded, the Court does not address Defendant's arguments in the alternative."); *Manufactured Hous.*, 660 F. Supp. 2d at 1210 ("Plaintiff contends notice was given on August 22, 2007, which is still over six months after the expiration of the second policy and years after the expiration of the first policy. . . . Because Plaintiff failed to provide timely notice to Defendant, there is no coverage owed by Defendant under the policies purchased by Plaintiff."); *Faithlife Corp. v. Philadelphia Indem. Ins. Co.*, No. C18-1679RSL, 2020 WL 7385722, at *5 (W.D. Wash. Dec. 16, 2020) ("Plaintiff did not report the claim to defendant until it provided notice of the subsequent filing of the underlying lawsuit on March 28, 2017, . . . after the 2016 Policy period had terminated. . . . The Court finds defendant has discharged its burden to show that the claim is excluded from coverage under the Policies based on plaintiff's failure to timely report the claim under the 2016 Policy.").

ORDER - 16

Indeed, because the Prior Consent clause comes after the conditional phrase—"provided that"— an average person purchasing the policy could reasonably interpret the Prior Consent clause to be a condition precedent of the agreement.  The Court also clarifies that the Prior Consent clause's location below the policy section title "INSURING AGREEMENT AND DEFENSE OBLIGATIONS" does not affect its conditional classification.  Whether a policy term is an exclusion, or a condition, is not affected by its placement within an insurance policy.  *See* RESTATEMENT OF THE LAW OF LIABILITY INSURANCE §§ 32, 34 (Am. L. Inst. 2019) (whether a term in a liability insurance policy is a condition or an exclusion does not depend on where the term is in the policy or the label associated with the term in the policy).  The policy states as much: "THE HEADINGS DO NOT CONSTITUTE TERMS OR CONDITIONS OF THIS POLICY AND ARE INCLUDED SOLELY FOR CONVENIENCE.  THE HEADINGS SHALL IN NO WAY MODIFY OR OTHERWISE AFFECT ANY OF THE PROVISIONS OF THIS POLICY."  Dkt. # 16-1 at 12.[3]

Washington courts have continued to expand the prejudice rule to "nearly all other contexts to prevent insurers from receiving windfalls at the expense of the public[.]"  *Staples*, 176 Wash. 2d at 418.  Thus, in order to deny coverage, Siriuspoint must establish that it suffered actual and substantial prejudice when Hermanson failed to provide notice of its Redress Expenses incurred before its February 2022 tender.[4]

---

[3] The Court declines to conflate the meaning of subparagraphs 1 and 2 with meaning that of the Prior Consent clause.  The Prior Consent clause "immediately and conjunctively" follows the "claims-made-and-reported" requirements under subparagraphs 1 and 2, these first two subparagraphs define the temporal scope of the policy and are strictly enforceable.  *See* Dkt. # 15 at 11.  In contrast, the Prior Consent clause—as explained throughout this order—is a distinct condition precedent, despite conjunctively following these two subparagraphs.

[4] As somewhat of an aside, the Court notes that the "Voluntary Payments clause"—also called a consent-to-settle clause—establishes an express condition precedent that directs Hermanson to secure Siriuspoint's prior written consent before incurring a redress expense and Siriuspoint's denial of coverage based on Hermanson's breach of this clause would also require a demonstration of prejudice.  *See*

Accordingly, the Prior Consent clause is not a "core coverage requirement" that would preclude Hermanson's claims, and Siriuspoint must show that it was actually and substantially prejudiced by its breach of the Prior Consent clause to deny coverage of Hermanson's Redress Expenses.

### III
#### CONCLUSION

For these reasons, the Court DENIES Siriuspoint's motion for summary judgment (Dkt. # 15) and GRANTS Hermanson's motion for partial summary judgment (Dkt. # 17).

Dated this 15th day of December, 2023.

*[signature: John H. Chun]*

John H. Chun
United States District Judge

---

*Klickitat*, 124 Wash. 2d at 803–04; *see, e.g.*, Dkt. # 15 at 16–17; Dkt. # 23 at 11, 14–16; Dkt. # 17 at 10. If the Court were to adopt Siriuspoint's interpretation of the Prior Consent clause, it would likely lead to conflicting interpretations of the clauses, which would render the policy ambiguous. When ambiguity exists in an insurance policy, the Court applies the interpretation most favorable Hermanson. *See United Specialty*, 2019 WL 199645, at *8 (citing *Peasley*, 131 Wash. 2d at 422–26). Because the Court must construe the language of an insurance contract together to give force and effect to each clause, the Voluntary Payments clause bolsters Hermanson's arguments. *See Transcon.*, 111 Wash. 2d at 456.

ORDER - 18